UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DOBSON, ET AL                          CIVIL ACTION

VERSUS                                 NO.  06-252

ALLSTATE INSURANCE CO., ET AL          SECTION "R"(5)


This Document applies to the following civil actions in the
Eastern District of Louisiana: 06-0252, 06-1097, 06-1064, 06-
1255, 06-1734, 06-1585.


## ORDER

Before the Court are motions to remand the above-listed

cases, many of which were transferred to this section because

plaintiffs claim damages pursuant to Louisiana's Valued Policy

Law, La. Rev. Stat. § 22:695.  Because many of these motions

concern identical questions of law, the Court has consolidated

its ruling in these matters for the sake of efficiency.  For the

following reasons, the Court GRANTS some motions and DENIES

others.

I.    **BACKGROUND**

Hurricanes Katrina and Rita devastated much of southern Louisiana in August and September of 2005.  Plaintiffs in these cases are Louisiana property owners who suffered substantial damage to their property during these storms and who have sued their insurance providers under their homeowner's policies.  Plaintiffs in all of the actions listed above have sued both their insurance providers and the agents who sold and/or renewed their policies.  The insurance providers lack citizenship or a principal place of business in Louisiana.  The insurance agents are citizens of Louisiana.  As such, the parties are not completely diverse, a requirement for a federal court to have jurisdiction under 28 U.S.C. § 1332.  *See McLaughlin v. Mississippi Power Co.,* 376 F.3d 344, 353 (5th Cir. 2004).  Plaintiffs filed their claims in Louisiana state court, and defendants subsequently removed them.  Plaintiffs have filed motions to remand these matters to state court.  In all of the cases, defendants assert that federal jurisdiction is proper under diversity jurisdiction pursuant to 28 U.S.C. § 1332 because the nondiverse insurance agent defendants have been joined improperly.  In all but one case, plaintiffs do not dispute defendants' assertion that the amount in controversy exceeds $75,000, so that it satisfies the requirements of section 1332.

2

*See* 28 U.S.C. § 1332.  In some cases, defendants allege that
federal question jurisdiction applies because the case implicates
federal law under the National Flood Insurance Act of 1968, 42
U.S.C. §§ 4001-4129.  *See* 28 U.S.C. § 1331.


## II.  LEGAL STANDARDS

### A.   Applying Louisiana Law

Because jurisdiction is based on diversity, Louisiana law
applies to the substantive issues before the Court.  *Erie R.R.
Co. v. Tompkins*, 304 U.S. 64, 78 (1938).  In Louisiana, the
sources of law are legislation and custom.  *Shaw Constructors v.
ICF Kaiser Eng'rs, Inc.*, 395 F.3d 533, 546 (5th Cir. 2004).
These authoritative or primary sources of law are to be
"contrasted with persuasive or secondary sources of law, such as
[Louisiana and other civil law] jurisprudence, doctrine,
conventional usages, and equity, that may guide the court in
reaching a decision in the absence of legislation and custom."
*Id*. (*quoting* La. Civ. Code art. 1*)*.  In Louisiana, "courts must
begin every legal analysis by examining primary sources of law:
the State's Constitution, codes, and statutes."  *Id*. (*quoting
Prytania Park Hotel, Ltd. v. General Star Indem. Co.,* 179 F.3d
169, 174 (5th Cir. 1999)).  To make an 'Erie guess' on an issue

of Louisiana law, the Court must "employ the appropriate
Louisiana methodology" to decide the issue the way that it
believes the Supreme Court of Louisiana would decide it.  *Id.*
(*quoting Lake Charles Diesel, Inc. v. Gen. Motors Corp.*, 328 F.3d
192, 197 (5th Cir. 2003)).

**B.   Removal**

A defendant may generally remove a civil action filed in
state court if the federal court has original jurisdiction over
the action.  *See* 28 U.S.C. § 1441(a).  The removing party bears
the burden of showing that federal jurisdiction exists.  *See
Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995).
In assessing whether removal was appropriate, the Court is guided
by the principle, grounded in notions of comity and the
recognition that federal courts are courts of limited
jurisdiction, that removal statutes should be strictly construed.
*See, e.g., Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d
720, 723 (5th Cir. 2002); *Neal v. Kawasaki Motors Corp.*, 1995 WL
419901, at *2 (E.D. La. 1995).  Though the Court must remand the
case to state court if at any time before final judgment it
appears that it lacks subject matter jurisdiction, the Court's
jurisdiction is fixed as of the time of removal.  28 U.S.C. §
1447(c); *Doddy v. Oxy USA, Inc.*, 101 F.3d 448, 456 (5th Cir.
1996).

**C.    Amount in Controversy**

In one of the cases at issue, *06-1097: Pennington v. Lexington*, plaintiffs allege that the amount in controversy requirement of 28 U.S.C. § 1332 is not satisfied.  Before the Court reaches the issue of whether the parties are diverse, it will examine whether the amount in controversy is sufficient to support federal jurisdiction.

Under Fifth Circuit law, a removing defendant's burden of showing that the amount in controversy is sufficient to support federal jurisdiction differs depending on whether the plaintiff's complaint alleges a specific amount of monetary damages.  *See Allen*, 63 F.3d at 1335.  When the plaintiff alleges a damage figure in excess of the required amount in controversy, "that amount controls if made in good faith."  *Id.* (*citing St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938)).  If a plaintiff pleads damages less than the jurisdictional amount, this figure will also generally control, barring removal.  *Allen*, 63 F.3d at 1335.  "Thus, in the typical diversity case, the plaintiff is the master of his complaint."  *Id.*

Here, however, plaintiffs sued in Louisiana state court, and Louisiana law does not permit them to plead a specific amount of money damages.  When, as here, plaintiffs allege an indeterminate amount of damages, the Fifth Circuit requires the removing

defendant to prove by a preponderance of the evidence that the amount in controversy exceeds $75,000.  *Simon v. Wal-Mart Stores*, 193 F.3d 848, 850 (5th Cir. 1999); *Allen*, 63 F.3d at 1335; *see also De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1412 (5th Cir. 1995).  A defendant satisfies this burden either by showing that it is facially apparent that the plaintiff's claims exceed the jurisdictional amount or by setting forth the facts in dispute supporting a finding that the jurisdictional amount is satisfied.  *Allen*, 63 F.3d at 1335.  The defendant must do more than point to a state law that might allow plaintiffs to recover more than the jurisdictional minimum; the defendant must submit evidence that establishes that the actual amount in controversy exceeds $75,000.  *See De Aguilar*, 47 F.3d at 1412.  When the "facially apparent" test is not met, it is appropriate for the Court to consider summary-judgment-type evidence relevant to the amount in controversy as of the time of removal.  *Allen*, 63 F.3d at 1336.

     If the defendant meets its burden of showing the requisite amount in controversy, the plaintiffs can defeat removal only by establishing with legal certainty that their claims are for less than $75,000.  *See De Aguilar*, 47 F.3d at 1411-12.  In *De Aguilar*, the Fifth Circuit stated that absent a statute limiting recovery, "[l]itigants who want to prevent removal must file a binding stipulation or affidavit *with their complaints*; once a

6

defendant has removed the case, *St. Paul* makes later filings irrelevant."  47 F.3d at 1412 (*quoting In re Shell Oil Co.*, 970 F.2d 355, 356 (7th Cir. 1992)) (emphasis added).  "The general principle is that plaintiffs will have to show that they are bound irrevocably by their state pleadings in these situations." *Id*. at 1412 n.10.  Plaintiffs did not file a binding stipulation with the complaint.

Post-removal affidavits or stipulations may be considered only in limited circumstances.  If the amount in controversy is ambiguous at the time of removal, the Court may consider a post-removal stipulation, but only to determine the amount in controversy as of the date of removal.  *See Gebbia v. Wal-Mart Stores, Inc.*, 233 F.3d 880, 883 (5th Cir. 2000); *Associacion Nacional de Pescadores v. Dow Quimica de Colombia S.A.*, 988 F.2d 559, 565 (5th Cir. 1993) (when the affidavit "clarif[ies] a petition that previously left the jurisdictional question ambiguous," the court may consider the affidavit in determining whether remand is proper).  When, on the other hand, the amount in controversy is clear from the face of the complaint, post-removal stipulations purporting to reduce the amount of damages that plaintiffs seek cannot deprive the Court of jurisdiction. *Gebbia*, 233 F.3d at 883.

As of the date of removal, plaintiffs' state court complaint

7

alleged that Lexington had paid out only $6,500 of $200,000 in policy coverage.  Plaintiffs assert that they are entitled to coverage up to the face value of their policy.  Thus, as of the date of removal, the amount in controversy was satisfied based on the face of the complaint, since plaintiffs claimed they were entitled to the difference between $200,000 and $6,500. Plaintiffs then filed a post-removal amendment to their complaint stipulating that Lexington made payments to them of $105,000 under their policy, and stipulating that the amount they sought was less than $75,000.  Because the Court's jurisdiction is determined as of the time of removal, the Court will not consider post-removal events or amendments in its analysis when the amount in controversy is apparent from the face of the complaint. Plaintiffs' post-removal stipulation cannot be considered because it does not clarify an initially ambiguous amount in controversy. *See, e.g., Gebbia*, 233 F.3d at 883, and discussion, *supra*. Hence, this stipulation is insufficient to deprive the Court of jurisdiction once it has been properly established. *Id*. The Court finds that the amount in controversy is sufficient to satisfy the requirements of 28 U.S.C. § 1332.  Joinder of the insurance agent in this case is discussed below.

**D.  Improper Joinder**

When a nondiverse party is properly joined as a defendant, a

defendant may not remove under section 1332.  However, a
defendant may remove by showing that the nondiverse party was
improperly joined.  *Smallwood v. Il. Cent. R.R. Co.*, 352 F.3d
220, 222 (5th Cir. 2003).  Because the doctrine is a narrow
exception to the rule of complete diversity, the burden of
demonstrating improper joinder is a heavy one.  *Id*.  Improper
joinder may be established by showing: (1) actual fraud in
pleading jurisdictional facts; or (2) the inability of the
plaintiff to establish a cause of action against the nondiverse
defendant.[1]  *Ross v. Citifinancial, Inc.*, 344 F.3d 458, 461 (5th
Cir. 2003).  In *Ross*, the Fifth Circuit clarified the standard
for finding improper joinder when a defendant alleges that
plaintiff is unable to state a claim against the nondiverse
defendant.  *Id*. at 462-63.  The Court must determine whether
there is arguably a reasonable basis for predicting that state
law might impose liability on the nondiverse defendant.  *Id.
(citing Great Plains Trust Co. v. Morgan Stanley Dean Witter &
Co.*, 313 F.3d 305, 312 (5th Cir. 2002)).  This means that there
must be a reasonable possibility of recovery, not merely a

_____

[1] The Fifth Circuit now officially refers to "fraudulent
joinder" as "improper joinder."  *See Melder v. Allstate Corp.*,
404 F.3d 328, 329 (5th Cir. 2005).  However, the term "fraudulent
joinder" is still used in many Fifth Circuit cases, causing no
shortage of confusion.

theoretical one. *Id.* The standard for evaluating a claim of improper joinder is similar to that used in evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Id.* The scope of the inquiry for improper joinder, however, is broader than that for Rule 12(b)(6), because the Court may "pierce the pleadings" and consider summary judgment-type evidence to determine whether the plaintiff has a basis in fact for his or her claim. *Id.* (*citing Travis v. Irby*, 326 F.3d 644, 648-49 (5th Cir. 2003); *see also Hornbuckle v. State Farm Lloyds*, 385 F.3d 538, 542 (5th Cir. 2004). In conducting this inquiry, the Court "must also take into account all unchallenged factual allegations, including those alleged in the complaint, in the light most favorable to the plaintiff." *Travis*, 326 F.3d at 649. In addition, the Court must resolve all ambiguities of state law in favor of the nonremoving party. *Id*.

## III. DISCUSSION

### A. 06-1734: Rault v. Encompass

In this action, defendants assert that Rault's claims against her insurance agent for failure to procure adequate coverage are perempted by the terms of La. Rev. Stat. § 9:5606, a statute establishing peremptive periods for contract and tort

10

actions brought against insurance agents.[2]  The statute provides
as follows:

> No action for damages against any insurance agent . . .
> whether based upon tort, or breach of contract, or
> otherwise, arising out of an engagement to provide
> insurance services shall be brought unless filed . . .
> within one year from the date of the alleged act,
> omission, or neglect, or within one year from the date
> that the alleged act, omission, or neglect is
> discovered or should have been discovered. However,
> even as to actions filed within one year from the date
> of such discovery, in all events such actions shall be
> filed at the latest within three years from the date of
> the alleged act, omission, or neglect.

La. Rev. Stat. § 9:5606.  The statute became effective in July
1991, and it does not apply if the plaintiff's cause of action
accrued before its effective date.  *See* 1991 La. Sess. Law Serv.
Act 764 (West); *Roger v. Dufresne*, 613 So. 2d 947, 949-50 (La.
1993).  Under the express terms of the statute, regardless of
whether plaintiffs sued within one year of discovering their
cause of action, the claim is still perempted if plaintiff does
not bring it within three years of the act, omission, or neglect.
La. Rev. Stat. § 9:5606.  Further, peremptive statutes are not
subject to suspension.  *Reeder v. North*, 701 So. 2d 1291 (La.

---

[2] Encompass also asserts that Rault's joinder of J. Everett
Eaves, Inc. is improper because: (1) there is no reasonable basis
under Louisiana law for the imposition of liability against Eaves
based on Rault's allegations; and (2) Rault's allegations against
Eaves are in no way related to her allegations against Encompass.
Because the Court finds that Rault's claims against Eaves are
perempted, it does not consider the other arguments.

11

1997).

Rault sued Encompass in Louisiana state court.  Rault alleged in her complaint that her policy from Encompass "provided a property location limit of $1,092,600" and that Encompass was liable for the payment of the policy limits.  Rault alleged that Encompass had paid only $2,510 under the policy, even though her home "was made a total and permanent loss."  She made her claim under Louisiana's Valued Policy Law, La. Rev. Stat. § 22:695, and also made claims of bad faith against Encompass, under La. Rev. Stat. §§ 22:658 and 22:1220.  Rault later amended her complaint to add Eaves, a Louisiana corporation that allegedly handled her account with Encompass.  She alleged that:

> Eaves breached its fiduciary duty to [her] in the following respects, among others . . . :
>
> A.   Eaves failed to timely provide [her] with a complete copy of the insurance policy and all its amendments;
> B.   Eaves failed to properly service and monitor the claims adjustment process;
> C.   Eaves failed to respond to [her] requests made with respect to her claims; and
> D.   In the event that [she] is not fully compensated for her losses, Eaves failed to obtain adequate insurance coverage in amounts and on terms which protected plaintiff against the losses she has suffered.

In her motion to remand, Rault relies only on the allegation that Eaves failed to obtain adequate insurance as the basis for her state court claim.  She alleges that Eaves procured

homeowner's policy No. 805972117 on her behalf and failed to obtain adequate coverage to protect her against the losses she suffered.  The plaintiff alleges that she paid premiums on this policy for 16 years.  Defendant submitted an unrebutted affidavit that plaintiff bought the policy at issue in March of 1989 from its predecessor in interest and renewed the policy every year thereafter.  Plaintiff does not dispute defendant's evidence that the policy contained a flood exclusion from its inception.

The Court finds that plaintiff's claims are perempted under any viable legal theory.  The peremptive statute, La. Rev. Stat. § 9:5606, became effective two years after Eaves procured the policy but before plaintiff sustained her uninsured loss.  As noted *supra*, the statute will not apply if plaintiff's cause of action accrued before its effective date in 1991.  *Roger*, 613 So. 2d at 949-50.

The central question to be resolved, therefore, is whether plaintiff's cause of action had already accrued when La. Rev. Stat. § 9:5606 became effective in 1991.  That question must be analyzed under article 3492 of the Louisiana Civil Code, which governed the prescription of this type of action before it was supplanted by La. Rev. Stat. § 9:5606.  *See Roger*, 613 So. 2d at 948.  Under article 3492, a plaintiff's cause of action does not accrue until she suffers damage.  *See Cole v. Celotex*, 599 So. 2d

13

1058, 1064 n.15 (La. 1992) ("[A] *sine qua non* for accrual of a cause of action is damages"); *see also Grenier v. Medical Eng'g Corp.*, 243 F.3d 200, 203 (5th Cir. 2001) (a cause of action for negligence accrues when a claimant is able to allege fault, causation, and damages).

Plaintiff contends that she suffered no damage until Hurricane Katrina struck her home, and Encompass denied coverage for her losses.  (R. Doc. 3) ("Damages caused by Eaves were not sustained . . . until Hurricane Katrina hit New Orleans.").  If the Court accepts plaintiff's theory that she suffered no damage until 2005, then under article 3492 her cause of action accrued after the effective date of La. Rev. Stat. § 9:5605.  This means that the statute applies to her cause of action, which is fatal to her claims against Eaves because the statute contains a three year peremptive period that runs from the date of the act, omission, or neglect.  The wrongful acts alleged against Eaves occurred in 1989, when plaintiff purchased her policy. Subsequent renewals of insurance policies do not restart the prescriptive period on torts committed at the time of initial purchase.  *See Biggers v. Allstate Ins. Co.*, 886 So. 2d 1179, 1182-83 (La. Ct. App. 2004); *Bel v. State Farm Mut. Auto. Ins. Co.*, 845 So. 2d 377, 382-83 (La. Ct. App. 2003); *see also Bordelon v. The Indep. Order of Foresters*, 2005 WL 3543815 at *3

14

(E.D. La. 2005).

Under the express terms of La. Rev. Stat. § 9:5606, regardless of whether a plaintiff sues within one year of discovering her cause of action, the claim is still perempted if the plaintiff does not bring it within three years of the act, omission, or neglect.  The Louisiana Supreme Court has recognized, under an analogous provision of Louisiana's legal malpractice statute, that the peremptive period controls even if plaintiff could not have brought her claim before the period expired.  *Reeder*, 701 So. 2d at 1297 ("[T]he cause of action is extinguished, regardless of when the negligence is discovered and regardless of whether a malpractice action may be brought within that three-year period.").  In *Reeder*, the plaintiff argued that the peremptive period should be suspended for the period of time his case remained on appeal, because he had not yet suffered the adverse judgment that gave rise to his damages.  *Id*.  The Louisiana Supreme Court held that "nothing may interfere with the running of a peremptive period.  It may not be interrupted or suspended . . . ."  *Id*. at 1298.  The Louisiana Supreme Court laid any resulting inequities at the feet of the Louisiana legislature.  *Id*. at 1297.  Louisiana's appellate courts have used this same reasoning in applying La. Rev. Stat. § 9:5606. *Biggers*, 886 So. 2d at 1182.

If, on the other hand, the Court assumes that plaintiff suffered some injury at the time Eaves allegedly failed to procure adequate insurance, such as by being exposed to uninsured property loss, her claim would still be untimely.  Under that scenario, her cause of action would have accrued in 1989 when Eaves procured the policy, which is before the adoption of La. Rev. Stat. § 9:5606.  *See Cole*, 599 So. 2d 1058, 1064 n.15 (noting that in Louisiana the slightest injury is sufficient to support the accrual of a cause of action).  Under those circumstances, prescription would be governed by La. Civ. Code art. 3492, under which the one-year prescriptive period begins to run from when the injury is sustained.  La. Civ. Code. art. 3492. The defense of *contra non valentem* can apply to suspend the running of prescription until plaintiff knew or reasonably should have known that she was the victim of a tort.  *Hendrick v. ABC Ins. Co.*, 787 So.2d 283, 290 (La. 2001).  However, the doctrine applies only in "exceptional circumstances," and a plaintiff "will be deemed to know what [she] could by reasonable diligence have learned."  *Renfroe v. State Dept. of Trans. and Dev.*, 809 So. 2d 947, 953 (La. 2002).

Plaintiff has not rebutted defendant's affidavit evidence that the policy in issue is No. 805972117, and that it was issued in 1989 and renewed each year.  Nor has plaintiff rebutted

16

defendant's showing that the policy has contained a flood
exclusion since its issuance.  Plaintiff does not even argue that
she could not reasonably have discovered the terms of her
insurance policy in the 16 years since Eaves procured her
homeowners insurance for her from Encompass or its predecessors.
Rather, she argues that she was not a tort victim before
Hurricane Katrina, which is an argument that does nothing but
place her within the coverage of section 9:5606.  Accordingly,
the Court finds that plaintiff could reasonably have discovered
the terms of her insurance policy in the 16 years since 1989.
Thus, if she suffered an injury at the time that Eaves procured
her policy, then plaintiff's claim is prescribed under article
3492 because she should have known of it more than one year
before she brought suit.  Consequently, plaintiff does not have a
reasonable possibility of recovery against Eaves on her claims
and joinder is thus improper.  The Court thus finds it has
jurisdiction over Rault's case.

   **B.   06-0252: Dobson v. Allstate**

   Plaintiffs Thomas and Fran Dobson sued Allstate, their
homeowners insurer, and Gregory Ruiz, their insurance agent,
after their home was rendered a total loss by Hurricane Katrina.
An Allstate adjuster allegedly found that the damage to
plaintiffs home was caused by hurricane-driven water, which

Allstate stated was excluded under the terms of their policy.
Allstate thus refused to compensate plaintiffs in full for their
loss.  Allstate contends that Ruiz is improperly joined because
plaintiffs did not make any claims against him in their state
court petition.  In their state court petition, plaintiffs allege
that Ruiz provided them professional advice and recommended the
policy in issue.  Plaintiffs also allege that they requested
advice from Ruiz, who assured them "that the policy of fire
(homeowner's) insurance he recommended included 'hurricane
insurance' which would cover and insure the Plaintiffs for all
damage associated with hurricanes."  Plaintiffs pray for judgment
against both Allstate and Ruiz.  Plaintiffs made no other
allegations against Ruiz in the state court complaint.

     After removal, plaintiffs submitted an amended complaint to
add an allegation that they relied on Ruiz to renew and adjust
their insurance policy each year "in order to insure that they
have the correct type of insurance and the policy coverage
amounts were sufficient to protect the Plaintiffs from damages
caused by a hurricane."  They allege that Ruiz was negligent in
connection with the October 2004 renewal of their policy by
failing to inform them that they were underinsured.  They also
allege that Ruiz made misrepresentations to them about their
coverage at that time.  Plaintiffs further allege that they did

18

not discover Ruiz' negligence and misrepresentations until after Hurricane Katrina rendered their home a total loss.  These new allegations cannot be considered by the Court in its evaluation of whether the Dobsons have a reasonable basis for recovering against Ruiz in a Louisiana court, because they were made following removal.  *See Pullman Co. v. Jenkins*, 305 U.S. 534, 537 (1939) (second amended complaint, filed after removal, was not to be considered in determining the right to remove); *Cavallini v. State Farm Auto Ins.* Co., 44 F.3d 256, 263 (5th Cir. 1995) (affidavit cannot defeat removal if it supports a legal theory not alleged in state court complaint but in amended complaint offered after removal); *Tedder v. F.M.C. Corp.*, 590 F.2d 115, 116 (5th Cir. 1979) ("Whether the case was properly removed is determined by reference to the allegations in a plaintiff's state court pleading.") (*citing Pullman*); *Ahrens v. TPLC, Inc.*, 955 F. Supp. 54, 56 (E.D. La. 1997) ("Whether or not plaintiffs fraudulently joined the non-diverse defendant is based on an analysis of the causes of action alleged in the state court petition at the time of removal.") (*citing Tedder*).

Based on the allegations of plaintiffs' state court complaint, their claims are perempted.  The unrebutted evidence demonstrates that Allstate's policy was initially issued in 1991 and that it contained a flood exclusion since that time.  (R.

Doc. 16 at Ex. A).   Plaintiffs allege that Ruiz recommended the
Allstate policy to them.   Plaintiffs complain that Allstate did
not cover hurricane-driven water and that Ruiz assured them that
they had coverage from all damages caused by a hurricane.   Since
it is the terms of the flood exclusion that would render Ruiz'
alleged statement to plaintiffs about the terms of their policy
inaccurate, his alleged misconduct occurred in 1991 when he sold
plaintiffs the policy containing the flood exclusion.   There are
no allegations in the original complaint of any subsequent
misrepresentations in connection with renewals.   Accordingly, the
renewals do not operate to restart peremption. *See Biggers*, 886
So. 2d at 1182-83 (peremptive period ran from the date of
purchase because the renewal process did not afford the insurance
agent the opportunity to make further misrepresentations about
the policy); *Bel*, 845 So. 2d at 382-83 (same).   The Dobson's
claims are therefore barred by the three-year peremption of La.
Rev. Stat. § 9:5606.

Even if the Court were to consider plaintiffs' post-removal
allegations, the last date on which plaintiffs assert that Ruiz
misrepresented the terms of their policy to them was October
2004.   Allstate has submitted an unrebutted affidavit stating
that a copy of the Dobson's policy, No. 015773867, was provided
to the Dobsons on or before October 2004.   (R. Doc. 16 at Ex. A).

An insured party is generally responsible for reading his policy, and he is presumed to know its provisions. *Motors Ins. Co. v. Bud's Boat Rental*, 917 F. 2d 199, 205 (5th Cir. 1990); *Stephens v. Audobon Ins. Co.*, 665 So. 2d 683, 686 (La. Ct. App. 1996) (*citing Matthews v. Business Men's Assur. Co. of America,* 478 So. 2d 634, 637 (La. Ct. App. 1985); *Perkins v. Shelter Ins. Co.,* 540 So. 2d 488 (La. Ct. App. 1989)).  The policy contained a flood exclusion, excluding all damage caused by flood, even if wind-driven, as well as a notice advising the Dobsons that flood protection was generally not available under a homeowners policy and could be purchased through a separate policy.  (R. Doc. 16 at Ex. B, pp. 1, 24).  A prescriptive or peremptive period will begin to run when the injured party has constructive knowledge of the facts that would entitle him to bring a suit.  *Campo v. Correa*, 828 So. 2d 502, 510 (La. 2002) (prescriptive period commences upon constructive knowledge); *Atlas Iron and Metal Co. v. Ashy*, 918 So. 2d 1205, 1210 (La. Ct. App. 2006) (one-year peremptive period for legal malpractice claim begins at the time constructive knowledge is obtained).  Information or knowledge that ought to excite attention and put the alleged victim on guard is sufficient to start the running of prescription.  *Campo*, 828 So. 2d at 510.  Knowledge of policy terms that directly contradict a statement by the agent who sold the policy is

sufficient to excite attention and put the insured on guard.
Thus, even if the Court were to consider plaintiffs' assertion
that Ruiz negligently misrepresented the terms of their coverage
to them in October 2004, they knew or should have known of his
wrongful conduct as of that time, as they had a copy of their
policy in hand.  Plaintiffs did not file suit against Ruiz until
December 21, 2005.  Because the alleged negligence should have
been discovered by plaintiffs more than one year from the date on
which they filed suit, their claims against Ruiz are perempted.
La. Rev. Stat. § 9:5606 (a claim against an insurance agent must
be brought within one year from the date that the alleged act,
omission, or neglect is discovered or should have been
discovered).  The Court finds that as plaintiffs do not have a
reasonable possibility of recovery against Ruiz, he is therefore
improperly joined, and the Court thus has jurisdiction over this
matter.

     **C.    06-1064: Davis v. Allstate**
              **06-1585: Wellmeyer v. Allstate**

In the above-captioned cases, plaintiffs allege that
Hurricane Katrina rendered their residences total losses, for
which the defendant insurers have refused to reimburse them.
Plaintiffs allege that Allstate improperly excluded losses caused
by hurricane-driven water.  Plaintiffs also alleged in their

original complaints that their insurance agents negligently misrepresented their coverage during the most recent renewal period before Hurricane Katrina destroyed plaintiffs' homes, in July 2005 (*Davis*) and August 2005 (*Wellmeyer*).  Specifically, plaintiffs allege that their agents failed to inform them that they were underinsured and negligently assured them that their insurance "would cover and insure them for all damages caused by a hurricane."  Plaintiffs do not allege that they made a specific inquiry of of their agents for a particular type or amount of coverage in connection with the renewal.  Rather, they allege that they "annually relied" on the agents to procure the right type and amount of coverage.

Insurance agents in Louisiana have a duty only to use reasonable diligence in attempting to place the insurance requested.  *See Karam v. St. Paul Fire & Marine Ins. Co.*, 281 So. 2d 728, 730 (La. 1973).  While there may be a duty, in some instances, for an insurance agent to inform his client of relevant provisions of Louisiana law that might act to limit recovery in connection with a policy, plaintiffs here do not make that claim.  *See Taylor v. Sider*, 765 So. 2d 416, 419 (La. Ct. App. 2000) (insurance agent failed to inform insured that Louisiana's anti-stacking laws would preclude recovery under the policy he sold).  Plaintiff does not cite, and the Court does not

23

find, any case imposing a duty on an agent to spontaneously identify a client's needs and advise him as to whether he is underinsured or carries the right type of coverage.

Louisiana recognizes actions for negligent misrepresentation leading to pecuniary loss when (1) the defendant owed a duty to supply correct information, (2) the defendant breached that duty, and (3) the plaintiff suffered damages resulting from justifiable reliance on the misrepresentation.  *Abbott v. Equity Grp., Inc.*, 2 F.3d 613, 624 n.38 (5th Cir. 1993); *Chiarella v. Sprint Spectrum, LLP*, 921 So. 2d 106, 123 (La. Ct. App. 2005); *see also Devore v. Hobart Mfg. Co.*, 367 So. 2d 836, 839 (La. 1979). Insurance agents have a duty to supply their customers with correct information, and they may be liable for negligent misrepresentation when they provide incorrect information and an insured is thereby damaged.  *See, e.g., Venture Assocs. Inc. of La. v. Trans. Underwriters of La.*, 634 So. 2d 4, 6-7 (La. Ct. App. 1994).  Plaintiffs assert that the defendant agents negligently omitted to supply information or supplied incorrect information to them at the time of renewal, causing damages when they were insufficiently insured for their losses from Hurricane Katrina.

Defendants respond by asserting that plaintiffs' claims are perempted under section 9:5606, because any harm caused by the

insurance agent was caused when the policies were originally purchased, which in each case is more than one year before the filing of the action.  Defendants assert that the peremptory period properly runs from the original date of purchase and is not tolled, suspended, or restarted by any subsequent renewals. The parties disagree as to whether the renewal of an insurance policy can trigger a new peremptive period when the plaintiff alleges that the agent negligently misrepresented the terms of the policy at the time of renewal.  *Compare Biggers*, 886 So. 2d at 1182-83 (peremptive period ran from the date of purchase because the renewal process did not afford the insurance agent the opportunity to make further misrepresentations about the policy); *Bel*, 845 So. 2d at 382-83 (La. Ct. App. 2003) (same); *with Sonnier v. La. Farm Bureau Mut. Ins. Co.*, 924 So. 2d 419, 422 (La. Ct. App. 2006) (agent made annual misrepresentations about the availability of additional coverage, restarting the peremptive period).  However, even if the Court were to conclude that a negligent misrepresentation made at the time of renewal could restart the peremptive period, plaintiffs' allegations and the uncontested facts before the Court preclude any possible recovery by plaintiffs against their insurance agents.

In order to recover for negligent misrepresentation, plaintiffs must be able to prove that they *justifiably* relied on

defendants' alleged misrepresentations about their policies. *Abbott*, 2 F.3d at 624 n.38; *Abell v. Potomac Ins. Co.*, 858 F.2d 1104, 1131 n.33 (5th Cir. 1988), *vacated on other grounds*, 492 U.S. 914 (1989). Based on the uncontested facts, the Court concludes that plaintiffs cannot show justifiable reliance and thus do not stand a reasonable possibility of prevailing under Louisiana law.  Both of plaintiffs' homeowner's policies contain a clearly worded flood exclusion:

> We do not cover loss to the property described in **Coverage A - Dwelling Protection or Coverage B - Other Structures Protection** consisting of or caused by:
>     1. Flood, including but not limited to surface water, waves, tidal water or overflow of any body of water, or spray from any of these, whether or not driven by wind.

(*Wellmeyer*, R. Doc. 11 at Ex. B;  *Davis*, R. Doc. 13 at Ex. A) (bolding in original).  The policies also inform plaintiffs that most homeowners insurance policies "do not provide coverage for damage caused by floods . . . . In fact, protection against floods is generally available only through a separate policy." *Id*.  The policies' only mention of hurricanes is to provide for a hurricane deductible, but the policies do cover damage caused by wind.  *Id*.  Allstate has further submitted uncontested affidavits indicating that the Wellmeyers purchased policy No. 910974677 on or about August 22, 2003 and received a copy of it at that time, while the Davises purchased their homeowner policy in July 2004

26

and received a copy.  (*Wellmeyer*, R. Doc. 11 at Ex. A; *Davis*, R. Doc. 13 at Ex. B).  Thus, to the extent that plaintiffs allege that the agents' representations about coverage for hurricane damage misled them as to whether flooding caused by hurricanes would be covered under the policy, they were in possession of clear policy language indicating that such damage was excluded. An insured is responsible for reading his policy and presumed to know its terms.  *See, Motors Ins. Co.* 917 F. 2d at 205; *Stephens*, 665 So. 2d at 686 (*citing Matthews v. Business Men's Assur. Co. of America*, 478 So. 2d 634, 637 (La. Ct. App. 1985); *Perkins v. Shelter Ins. Co.*, 540 So. 2d 488 (La. Ct. App. 1989)).  The Court finds that plaintiffs are chargeable with knowledge of the terms of their policy, and they could not justifiably rely on the alleged misrepresentations of their insurance agents about the type of coverage they held.  Plaintiffs received their policies, and the terms of the coverage were clear.  Plaintiffs could have verified or contradicted any representation about the terms of coverage by referring to the policies themselves, distinguishing these facts from those of *Sonnier*.  *See Sonnier*, 924 So. 2d at 422 (misrepresentation based on giving the insured incorrect information about the availability of additional coverage, which was presumably not included in the policy).  Plaintiffs offer no evidence that their policies were ambiguous or insufficiently

complete to be compared with the alleged misrepresentations made
by their agents.  Nor do their complaints or any evidence in
support of them allege facts indicating that the agents' words or
conduct justified plaintiffs in failing to heed the clearly
worded policy language in their possession.  Indeed, plaintiffs
offer no summary judgment-type evidence at all, and their briefs
assert novel theories of recovery not stated in their original
complaints.

Accepting as true that the insurance agents told plaintiffs
that they were insured for all damages caused by hurricanes, the
Court finds that plaintiffs cannot prove justifiable reliance on
the alleged misrepresentations made by their insurance agents in
light of their possession of clearly worded contract terms to the
contrary.  Consequently, plaintiffs will be unable to prevail in
an action for negligent misrepresentation against the agents, and
the agents are improperly joined.  The Court therefore has
jurisdiction over these matters.

**D.    06-1097: Pennington v. Lexington**
**       06-1255: Ketnor v. Lexington**

Here, plaintiffs make identical allegations against their
insurers and agents to those of the plaintiffs in *Davis* and
*Wellmeyer*, *supra*, but defendants do not challenge the claims as
perempted.  Unlike Allstate in the cases discussed *supra*,

28

Lexington has not submitted any evidence about the terms of
plaintiffs' policies, any exclusions therein, or the dates on
which plaintiffs purchased or renewed their policies.  Instead,
defendants simply assert that plaintiffs cannot establish a cause
of action against their agents, without citing any authority for
this position.  This argument is rejected.  Louisiana law
supports a cause of action against insurance agents for negligent
misrepresentation.  Defendants also point out that the agents
could not be held jointly liable with the insurers on the facts
alleged, which is of little consequence to the analysis, since
the claims are fairly read to be in the alternative.  Finally,
defendants assert that the claims are not sufficiently related to
satisfy Rule 20.  Rule 20(a) of the Federal Rules of Civil
Procedure allows for the joinder of defendants "if there is
asserted against them jointly, severally, or in the alternative,
any right to relief in respect of or arising out of the same
transaction, occurrence, or series of transactions or occurrences
and if any question of law or fact common to all defendants will
arise in the action."  Fed. R. Civ. P. 20(a).  Plaintiffs here
seek to recover from their insurers because they believe their
coverage should fully compensate them for their hurricane-related
losses.  In the event that their coverage does not protect them
against losses caused by a hurricane, they seek to recover

against their insurance agents based on alleged misrepresentations that their insurance would be sufficient. These claims against the insurance agents are thus in the alternative to plaintiffs' claims against the insurers. Furthermore, common questions of fact stemming from the same series of transactions and occurrences will arise in both claims, as both relate to the procurement of a particular policy, the terms of that policy, the extent of its coverage, and the facts surrounding the destruction of plaintiffs' property.

The Court finds that defendants have failed to carry their burden of demonstrating that joinder of the nondiverse defendants was improper. The Court thus does not have jurisdiction on the basis of the diversity of the parties. *See* 28 U.S.C. § 1332.

### E.    Federal Question Jurisdiction

The defendants in *Ketnor* and *Pennington* allege that even if the Court does not find a basis for jurisdiction under 28 U.S.C. § 1332, jurisdiction would still be proper under 28 U.S.C. § 1331. Federal district courts have jurisdiction over cases "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Whether a claim arises under federal law must be determined by referring to the "well-pleaded complaint." *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 808 (1986) (citing *Franchise Tax Bd. v. Constr. Laborers Vacation*

*Trust*, 463 U.S. 1, 9-10 (1983)); *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001).  This means that the federal question must appear on the face of the complaint.  *See Torres v. Southern Peru Copper Corp.*, 113 F.3d 540, 542 (5th Cir. 1997). Because defendants may remove a case to federal court only if the plaintiffs could have brought the action in federal court from the outset, "the question for removal jurisdiction must also be determined by reference to the 'well-pleaded complaint.'" *Merrell Dow*, 478 U.S. at 808 (citation omitted).  Defendants assert that plaintiffs ask the Court to settle a dispute arising under a Standard Flood Insurance Policy, the terms of which are established by federal regulation.  *See* 44 C.F.R. Pt. 61, App. A. The Court finds no such disputes in plaintiffs' complaints, which assert recovery only under their homeowners' policies and related Louisiana law.

Because plaintiffs do not assert any claims under federal law, federal question jurisdiction exists only if an exception to the well-pleaded complaint rule applies.  Defendants assert that plaintiffs' claims require the Court to construe a federal statute, the National Flood Insurance Act of 1968, 42 U.S.C. §§ 4001-4129, because plaintiffs seek to convert their homeowners policies into flood policies.  Defendants also assert that jurisdiction is proper because of a compelling federal interest

in the application of the federal flood program.  An action that
contains "an important issue of federal law" may establish
federal jurisdiction in some instances.  *Grable & Sons Metal
Prods., Inc. v. Darue Eng'g & Mfg.*, 125 S. Ct. 2363, 2368 (2005)
("The doctrine captures the commonsense notion that a federal
court ought to be able to hear claims recognized under state law
that nonetheless turn on substantial questions of federal law . .
. .").  In *Grable*, the plaintiff filed a quiet title action in
Michigan state court alleging that the defendant's title to
certain property was invalid, and defendant removed.  125 S. Ct.
at 2366.  A Michigan court rule required the complaint to specify
"the facts establishing the superiority of [its] claims," and
plaintiff "premised its superior title claim on a failure by the
IRS to give it adequate notice, as defined by federal law."  *Id*.
at 2368.  Whether the plaintiff "was given notice within the
meaning of a the federal statute," the Court recognized, was
"thus an essential element of its quiet title claim, and the
meaning of the federal statute [was] actually in dispute . . . ."
*Id*.  In finding federal question jurisdiction, the Court observed
that the meaning of the federal tax provision was an important
issue of federal law that belonged in federal court, especially
in light of the Government's interest in the "'prompt and certain
collection of delinquent taxes,'" and the IRS' need for certainty

32

in notice requirements to provide buyers of seized property
assurance that the IRS has taken all steps required to convey
good title. *Id.* (*quoting United States v. Rodgers*, 461 U.S. 677,
709 (1983)).  The Supreme Court has since labeled the cases that
will properly merit federal jurisdiction under the rule of *Grable*
a "slim category." *Empire Healthchoice Assur., Inc. v. McVeigh*,
126 S. Ct. 2121, 2137 (2006).  This is because *Grable* did not
overturn the rule that federal question jurisdiction exists only
when "a state-law claim necessarily raise[s] a stated federal
issue, actually disputed and substantial, which a federal forum
may entertain without disturbing any congressionally approved
balance of federal and state judicial responsibilities." *Grable*,
125 S. Ct. at 2368.  The mere presence of a federal issue "does
not automatically confer federal-question jurisdiction." *Merrell
Dow*, 478 U.S. at 813.  Since *Grable* was decided, federal courts
have repeatedly turned back attempts to peg federal jurisdiction
on its holding, often because the federal issue allegedly
implicated is not "disputed and substantial." *See, e.g.*,
*McCormick v. Excel Corp.*, 413 F. Supp. 2d 967, 970 (E.D. Wis.
2006) (the meaning of the crucial term in a federal regulation
had already been decided); *Samuel Trading, LLC v. Diversified
Group, Inc.*, 420 F. Supp. 2d 885, 892 (N.D. Ill. 2006) (though

33

the case might contain a dispute over federal law, the dispute was not substantial because it did not affect plaintiff's right to relief).

Defendants do not explain how the Court would be forced to interpret the NFIA to decide these cases or award plaintiffs the relief they seek, and the Court does not see how it might be forced to do so.  Plaintiffs seek recovery based on the terms of their insurance policies and relevant state law, and they do not urge any particular reading of federal law in support of their claims.  Finally, defendants' assertion that the federal government has a compelling interest in the resolution of these claims because of the mere existence of the NFIA proves too much. Interpretation of a contract under state law will often involve events, parties, and issues that are otherwise the subject of federal regulation.  A mere tangential relationship to a federal policy cannot be sufficient to bring these claims into federal court.  The Court finds that it does not have jurisdiction over these cases under 42 U.S.C. § 1331.


IV.  CONCLUSION

For the foregoing reasons, the motions to remand in *Pennington v. Lexington,* and *Ketnor v. Lexington,* are hereby GRANTED.  The motions to remand in *Rault v. Encompass*, *Dobson v.*

34

*Allstate*, *Davis v. Allstate,* and *Wellmeyer v. Allstate* are DENIED.  The Court does not award fees or costs to any party in these matters.

New Orleans, Louisiana, this <u>21st</u> day of July, 2006.

<u>                         </u>
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE